UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:13-cv-24581-UU

JAMES GREGWARE,

    Plaintiff,

v.

THE SCOTTS MIRACLE-GRO
COMPANY, *et al.*,

    Defendants.

                                 /

## ORDER ON MOTION TO DISMISS

    THIS CAUSE is before the Court upon Defendants' Motion to Dismiss. D.E. 7.  Plaintiff filed a Response. D.E. 11..  The Motion is therefore ripe for disposition.

    THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

## BACKGROUND

    Plaintiff, James Gregware, is a Florida resident.  D.E. 1 ¶ 2.  Defendant, The Scotts Miracle-Gro Company ("Scotts Miracle-Gro"), is an Ohio corporation with its principal place of business in Marysville, Ohio.  *Id.* ¶ 3.  Defendant, The Scotts Company, LLC ("Scotts Co."), is an Ohio limited liability company with its principal place of business in Marysville, Ohio, and is a wholly-owned subsidiary of Scotts Miracle-Gro.  *Id.* ¶ 4.  Both companies participate in the marketing and sale of consumer lawn and garden products, and both transact business throughout the state of Florida.  *Id.* ¶¶ 3-4.  Plaintiff brings this suit as the representative of a putative class action and alleges that the Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), because the class members (Florida consumers who purchased Defendants' subject product from December 20, 2009 to the present), and Defendants are citizens of different states.  *Id.* ¶¶ 5, 23.

The product that is the subject of this action is called Scotts Green Max Lawn Fertilizer Plus 5.17% Iron for Deep Greening (the "Product"). *Id.* ¶ 7. According to its packaging, the Product offers "10x the feeding power of Ironite" – presumably a competing brand – and contains "triple the iron for fast, extreme greening." *Id.* The reverse side of the Product features a Quick Start Guide consisting of three "simple steps" for obtaining "a beautiful Scotts lawn." *Id.* ¶ 8. Only one of these simple steps is of any import in the instant Motion. That step, Step Three, instructs consumers to clean up and – according to Plaintiff – "expressly warrants" that "sweeping product from hard surfaces onto the lawn keeps product on the grass and prevents staining." *Id.* ¶ 8.

Plaintiff alleges that, contrary to Defendants' representations that adhering to Step Three will prevent staining, the Product causes rust-like staining to the hard surfaces surrounding the lawn where the Product has been applied, regardless of the clean-up efforts undertaken by consumers. *Id.* ¶ 9. According to Plaintiff, Defendants have actual knowledge that the iron content or consistency of the Product will and does cause staining to hard surfaces – including driveways, sidewalks, patios, and other surfaces – even when consumers follow the instructions providing on the Product's packaging. In other words, Plaintiff alleges that Step Three is *not* so simple, and that Defendants *know it*. Plaintiff further alleges that the packaging of Ironite, a competing product containing less iron than Defendants' Product, includes the explicit disclosure: "IRONITE WILL STAIN," and further represents that "[i]f concrete is wet when contact occurs, staining may be impossible to prevent." *Id.* ¶ 13.

Finally, Plaintiff alleges the Product causes injury to property by damaging consumers' homes and real property and by causing consumers the out-of-pocket expense of purchasing stain removal products and, in some cases, hiring stain removal professionals. *Id.* ¶ 15. Plaintiff

2

brought this action for (1) violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*, and (2) breach of express warranty.

## LEGAL STANDARD

In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Id*. (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*.  The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  *Id*.  Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense.  *Id*. at 679.

## DISCUSSION

Defendant moves to dismiss this action in its entirety on the grounds of *forum non*

*conveniens*, and to dismiss Count I for failure to state a cause of action.  Defendants do not move to dismiss Plaintiff's breach of express warranty claim.  For the reasons set forth below, Defendants' Motion is GRANTED as to Count I, but DENIED as to its request for dismissal on *forum non conveniens* grounds.

### A. *Forum non conveniens*

Defendants argue that this action warrants dismissal because Plaintiff is a resident of Orlando, which lies in the Middle District of Florida, rather than in the Southern District.  Under the doctrine of *forum non conveniens*, dismissal is appropriate where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice.  *Piper Aircraft v. Reyno*, 454 U.S. 235, 249 (1981).  Defendants do not argue that they transact more business in the Middle District than in the Southern District, or that they are any more present there than here.  At the outset, then, this basis for dismissal appears patently frivolous.  And it is.  In any event, the Court need not – and indeed cannot – engage in a *forum non conveniens* analysis because federal courts' exercise of the doctrine has been limited by the Supreme Court to cases in which the alternative forum lies outside the United States.  *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722 (1996).

Plaintiff, in his Response, engages in a thorough analysis under the federal venue transfer statute, 28 U.S.C. § 1404(a), as if Defendants had alternatively moved for transfer of this action under that statute.  In deciding whether a change of venue would best serve these goals, the Court considers nine factors:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the

>  governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).  However, Defendants did not move for a change of venue under § 1404(a) and did not argue these factors in their Motion.  To the extent that any of their arguments in favor of a *forum non conveniens* dismissal overlap with a consideration of the foregoing factors, the Court finds that Defendants have not satisfied their burden of showing that the suggested forum is more convenient or that litigation there would be in the interest of justice.  *See In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).  Therefore, its request for dismissal or transfer on such grounds is DENIED.

> **B. FDUTPA**

Defendants move to dismiss Plaintiff's FDUTPA claim on the grounds that the stated injury – the costs and depreciation in value associated with stained hard surfaces – cannot be the subject of this FDUTPA claim.  A claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *Smith v. WM. Wrigley Jr. Company*, 663 F. Supp. 2d 1336, 1339 (S.D. Fla. 2009) (quoting *City First Mortg. Corp. v. Barton*, 988 So.2d 82, 86 (Fla. Dist. Ct. App. 2008)).  However, FUTPA does *not* apply to "a claim for damage to property other than the property that is the subject of the consumer transaction." Fla. Stat. § 501.212(3).  Herein lies Plaintiff's problem.

Plaintiff has failed to state a claim a FDUTPA claim because, as currently pleaded, it is a claim for damage to property (class members' hard surfaces) *other* than the property that was the subject of the consumer transaction (the Product).  This goes to the entire claim, not just to the actual damages element. Plaintiff argues that because Defendants' labeling represented or warranted that "sweeping product from hard surfaces into lawn keeps product on the grass and prevents staining," the aforementioned "hard surfaces" are thereby made the "subject of the

5

consumer transaction." But this interpretation defies both case law and logic.  Florida precedent makes clear that FDUTPA "is intended to protect a consumer from unfair or deceptive practices which diminish the value or worth of the foods or services *purchased* by the consumer." *Urling v. Helms Exterminators, Inc.*, 468 So. 2d 451, 454 (Fla Dist. Ct. App. 1985).  For example, where a FDUTPA claim was brought against the purveyors of home alarm systems, "the subject of the consumer transaction" was found to be "the installation of the burglar alarm system and the services performed, rather than the items stolen." *Rollins, Inc. v. Heller*, 454 So. 2d 580, 584 (Fla. Dist. Ct. App. 1984) (Nesbitt, J.).  In this case, the property that was the subject of Plaintiff's consumer transaction was the Product actually manufactured or marketed by Defendants – not the "other property" in Plaintiff's life that may have been consequentially affected by said Product's shortcomings.  Plaintiff did not purchase any hard surface from Defendants, Defendants did not install any hard surface for Plaintiff, and Plaintiff did not pay Defendants to care for, treat, or in any way act upon his hard surfaces.

  This is the only application of Section 501.212(a) that makes sense.  Defendants may be held responsible for the products about which they made deceptive statements or for which they engaged in unfair trade practices, but – under the clear language of the statute – they cannot be held responsible for damage to property over which they have no control.  The Act's required element of *actual* damages is only reinforced by Section 501.212(a)'s absolute preclusion of claims for damage to *other property*.  Therefore, Plaintiff may not request damages stemming from stain removal or the diminution in value of real property under FDUTPA, as he has done in his Complaint.  Nor could the FDUTPA claimsurvive as a request for injunctive relief alone, because it would nevertheless be a "claim for damage to property other than the property that is the subject of the consumer transaction."  Accordingly it is

ORDERED AND ADJUDGED that the Motion, D.E. 1, is GRANTED IN PART and DENIED IN PART.  The Motion is GRANTED as follows: (1) Count I is DISMISSED.  The Motion is DENIED in all other respects.  It is further

ORDERED AND ADJUDGED that Defendants SHALL file an Answer within ten days of entry of this Order.

DONE AND ORDERED in Chambers, Miami, Florida, this 27th day of February, 2014.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:  counsel of record