UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:13-cv-24581-UU

JAMES GREGWARE, on behalf of himself
and all others similarly situated,

    Plaintiff,

v.

THE SCOTTS MIRACLE-GRO COMPANY
& THE SCOTTS COMPANY, LLC,

    Defendants.
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's Motion for Class Certification and Plaintiff's Amended Motion for Class Certification. D.E. 16 & 28. On July 25, 2014, Defendants' filed their Response, D.E. 32, and on August 6, 2014, Plaintiff filed his Reply, D.E. 36. Thus, the Motions are ripe for disposition.

THE COURT has considered the Motions and the pertinent portions of the record, and is otherwise fully advised in the premises. For the reasons set forth below, Plaintiff's Motions are Denied.

## BACKGROUND

Defendant The Scotts Miracle-Gro Company ("Scotts Miracle-Gro") and Defendant The Scotts Company, LLC ("Scotts Co.") manufacture, distribute and market Green Max products. D.E. 29-1 at 17-20. The Green Max products are lawn fertilizers with an iron component. D.E. 29-2 at 14.

Defendants initiated a national launch of Green Max in 2010. D.E. 29-1 at 17. At that time, the Defendants called their product Green Max Lawn Fertilizer Plus 5.75% Iron for Deeper Greening and Green Max Southern Lawn Fertilizer Plus 5.75% Iron for Deeper Greening. D.E. 29-3; D.E. 29-1 at 35. Within a year of the production of these Green Max fertilizers, Defendants reduced the iron content of these products to 5.17%, and changed the packaging to Green Max Lawn Fertilizer Plus 5.17% Iron for Deeper Greening and Green Max Southern Lawn Fertilizer Plus 5.17% Iron for Deeper Greening. D.E. 29-8; D.E. 29-2 at 24. Nonetheless, the instructions and Quick Start Guide for the Green Max products containing 5.75% and 5.17% of iron apparently were identical. D.E. 29-3; D.E. 29-8. Plaintiff alleges that Defendants expressly warranted that the product would not stain if swept from hard surfaces. Specifically, the "Clean-up" step of the Quick Start Guide located on the packaging of these products stated "Sweeping product from hard surfaces onto the lawn keeps product on the grass and prevents staining." Compl. ¶ 45.

In 2012 or 2013, Defendants repackaged these products as one product called Green Max Lawn Food. D.E. 29-9; D.E. 29-1 at 36. Notwithstanding the change in name, the formulas for Green Max Law Food and Green Max Lawn Fertilizer Plus 5.17% are identical. D.E. 29-2 at 23. However, the "Clean-up" step on the packaging of Green Max Lawn Food was revised to include a yellow box containing the following statement in red: "THIS PRODUCT WILL STAIN SIDEWALKS, DRIVEWAYS AND OTHER CONCRETE OR HARD SURFACES. SWEEP OFF ANY PRODUCT THAT MAY HAVE LANDED ON THESE AREAS, AND TAKE CAUTION WHEN APPLYING NEAR POOLS." D.E. 29-9. According to Angela Gray-Edwards, the Green Max brand manager, Defendants initiated a rolling change from the Green

Max fertilizer products to the Green Max Lawn food product, which created the likelihood that both products were being sold in retail stores at the same time.  D.E. 29-1 at 37.

Plaintiff alleges that on June 1, 2013, he purchased a bag of Green Max Southern Lawn Fertilizer Plus 5.17% Iron for Deep Greening.  D.E. 29 at 7; D.E. 29-17.  Plaintiff further alleges that despite his strict adherence to the package instructions, the product caused unsightly rust-like stains to his driveway, porch and other surfaces.  Compl. ¶ 19.  On December 20, 2013, Plaintiff filed suit to address the property damage caused by Green Max Lawn Fertilizer and Green Max Southern Lawn Fertilizer (collectively, the "Product").  Generally, Plaintiff seeks class certification because he maintains that, beyond his own injuries, the Product causes injury to the property of consumers and causes consumers to incur out-of-pocket expenses for the purchase of removal products and in some cases, for the hiring of stain removal professionals.  *Id.* ¶ 15.

Plaintiff's only remaining claim is for breach of express warranty under Florida law,[1] and based on the allegations above, Plaintiff seeks class certification under Federal Rule of Civil Procedure 23(a), Rule 23(b)(2) and Rule 23(b)(3).

## STANDARD OF REVIEW

A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 have been satisfied.  *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984).  A plaintiff seeking class certification carries the burden of proof, *Rustein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000), and must "affirmatively demonstrate" that all of the requirements of Rule 23 are met, *Wal-Mart Stores, Inc. v. Dukes*, 131

---

[1] On February 27, 2014, the Court dismissed Plaintiff's claim under the Florida Deceptive and Unfair Trade Practices Act.  D.E. 12.

S. Ct. 2541, 2551 (2011).

Rule 23(a) contains an implicit, threshold requirement that the proposed class be "adequately defined and clearly ascertainable." *See, e.g.*, *Rink v. Cheminova, Inc.*, 203 F.R.D. 648, 659 (M.D. Fla. 2001) (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) ("It is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable.")).[2] Rule 23(a) further contains four explicit prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These four prerequisites are commonly referred to as "numerosity, commonality, typicality, and adequacy of representation." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 (11th Cir. 2003). Additionally, a court may only certify a class action if at least one of the three alternative requirements of Rule 23(b) has been met. *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir. 2000).

In determining whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). "Although a court should not determine the merits of a case at the class certification stage, the court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied." *Valley Drug Co.*, 350 F.3d at 1188 n.15; *see also Hudson v. Delta Airlines,* 90 F.3d 451, 457 (11th Cir. 1996) (stating it is sometimes necessary to

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

probe behind the pleadings before coming to rest on the certification question).

## DISCUSSION

Before this Court can address whether Plaintiff has satisfied the requirements of Rules 23(a), 23(b)(2) or 23(b)(3), the Court must first address Rule 23's implied requirement to show that the proposed class is "adequately defined and clearly ascertainable." *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 F. App'x 782, 787 (11th Cir. 2014) (internal quotation marks and citation omitted). "The analysis of the objective criteria also should be administratively feasible," meaning "that identifying class members [should be] a manageable process that does not require much, if any, individual inquiry." *Id.*

Plaintiff seeks to certify the following class:

> All Florida consumers who purchased Scotts Green Max Lawn Fertilizer or Scotts Green Max Southern Lawn Fertilizer and suffered staining to their homes, real property or other hard surfaces as a result of using the Product between December 20, 2009 and the present.

The Court finds the proposed class definition to be overbroad to the extent that "staining to other hard surfaces" is not limited to hard surfaces located on consumers' real property and therefore, for example, could encompass claims based on staining to sidewalks or other surfaces abutting consumers' property that may be owned by a governmental entity or other third parties. Additionally, the Court finds that it would be difficult to apply the proposed definition and ascertain which individuals should be members of the class. The Court must be able to look to objective criteria to accurately delineate membership in the class and identifying class members

must be a manageable process that requires little individual inquiry.

Here, based on Plaintiff's class definition, the Court would have to inquire into whether each consumer purchased the Product, whether each consumer used the Product and whether each consumer's use of the Product caused staining to hard surfaces on the consumer's property. To prove purchase, each potential class member would have to submit a receipt, packaging of the Product or some other evidence showing that he or she purchased the Product. It is unclear how each consumer would prove usage or that the Product caused the staining to hard surfaces owned by the consumer.[3] Given the need for individual inquiry on these discrete qualifications for class membership, as proposed, the class definition does not provide the Court a manageable method of determining who is part of the class.

Although the Court has found that the class definition is not adequately defined or clearly ascertainable, the Court will now address whether the prerequisites of Federal Rule of Civil Procedure 23(a) and the requirements of Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) have been satisfied.

I. Rule 23(a) Prerequisites

Plaintiff may only sue on behalf of class members if he satisfies the four prerequisites of Rule 23(a), which are commonly referred to as numerosity, commonality, typicality and adequacy.

A. Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

---

[3] Such proof conceivably could require testing of the soil where the Product was used and testing of the hard surfaces that were stained to determine whether the staining was due to use of the Product.

impracticable."  Whether a class meets the numerosity prerequisite depends on the facts of each case and involves an analysis of the following factors: (i) the size of the class; (ii) the geographic dispersion of class members; (iii) the ease with which class members may be identified; (iv) the nature of the action; and (v) the size of each plaintiff's claim.  *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981).  "[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers varying according to other factors."  *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotation marks and citation omitted).

      Plaintiff claims that the numerosity prerequisite is met here because approximately 325 Florida consumers contacted Defendants during the proposed class period to complain about staining caused by the Product.  D.E. 29 at 10.  In support of his argument that the numerosity prerequisite has been satisfied, Plaintiff also claims that sales data shows that 349,726 units of the Product were sold in Florida during the class period.  D.E. 29 at 10.  In response, Defendants concede that "the class can only be comprised of the 325 customers in Plaintiff's Motion who gave 'notice' to the [Defendants] of the alleged defect;" but nevertheless submit a spreadsheet indicating several of the 325 customers who should be excluded from the proposed class because they did not sweep the Product from hard surfaces (individuals highlighted in orange) or because they have already received a refund for the Product (individuals highlighted in green).  D.E. 32 at 11 n.3; D.E. 32-1.  Although the Court has misgivings regarding the ease with which class members can be identified, the Court accepts based on sales and the number of customers who complained that class membership is, at least, in the hundreds and the numerosity requirement is satisfied.

B. Commonality

Rule 23(a)(2) requires that *"there are questions of law or fact common to the class."* Class members' claims "must depend upon a common contention" that is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 131 S. Ct. at 2551. "What matters to class certification … is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks and citation omitted). For purposes of Rule 23(a)(2), "even a single common question will do." *Id.* at 2556.

According to Plaintiff, the common issues in this case are:

1. Whether the disclosures regarding staining, as provided by Defendants on the Product packaging, are false or misleading?

2. Whether the instructions, as provided by Defendants in the form of the Quick Start Guide on the Product packaging, are false or misleading?

3. Whether the disclosures regarding staining, as provided by Defendants on the Product packaging, constitute an express warranty?

4. Whether the instructions, as provided by the Defendants in the form of the Quick Start Guide on the Product packaging, constitute an express warranty?

5. Whether Defendants breached an express warranty?

6. Whether Plaintiff and Class Members have sustained damages and the proper measure of their losses?

       7.   Whether Plaintiff and Class Members are entitled to injunctive relief?

       8.   Whether Plaintiff and Class Members are entitled to other equitable relief or appropriate remedies?

As a threshold matter, the Court finds that the first two common questions suggested by the Plaintiff are unrelated to a breach of express warranty claim. At a minimum, in order to maintain a claim of breach of express warranty, a plaintiff must allege the following: (i) facts in respect to the sale of the product or other circumstances giving rise to warranty; (ii) identification of whether the warranty created was express or implied; (iii) circumstances of the injury as caused by the breach of warranty; (iv) notice to the seller of the alleged breach; and (v) injuries sustained and damages. *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 104 (Fla. Dist. Ct. App. 1969); *Dunham-Bush, Inc. v. Thermo-Air Serv., Inc.*, 351 So. 2d 351, 353 (Fla. Dist. Ct. App. 1977). Florida does not require proof that the instructions or disclosures creating the express warranty be false or misleading in order to maintain a breach of express warranty claim. Therefore, the first two questions identified by Plaintiff as common to the class are not in fact common to the class because the answers to those two questions will not impact the class's claim for breach of express warranty and thus, will not drive this litigation towards resolution.

With respect to the remaining common questions suggested by the Plaintiff, Defendants argue that the commonality element is not met here because individualized determinations as to reliance on the instructions, the usage of the Product and the damages suffered by class members are required for the breach of express warranty claim. D.E. 32 at 12-13.

Defendants appear to have collapsed the commonality analysis with the analysis required under Federal Rule of Civil Procedure 23(b)(3). *See Vega v. T-Mobile, USA, Inc.*, 564 F.3d

1256, 1268-69 (11th Cir. 2009) (finding that the "district court improperly conflated the commonality determination with a review of predominance pursuant to Rule 23(b)(3)" when it assessed commonality by analyzing "'whether issues that are subject to generalized inquiry, and thus applicable to the class as a whole, predominate over issues that are amendable only to individualized inquiry'"). It is well-settled that Rule 23(a)(2) only requires that there be "questions of law or fact common to the class." Even a single common question will satisfy the commonality requirement and as a result, not all questions of law and fact raised in this litigation need be common to the class. *See Vega*, 564 F.3d at 1268 (citation omitted).

Given that the proposed class action seeks to address a breach of express warranty claim, the Court finds that at least one of the remaining common questions identified by Plaintiff is capable of classwide resolution. For example, if the instructions or disclosures fail to create an express warranty then the claims of the class representative and the unnamed class members fail as a whole, which would resolve this litigation. Therefore, Plaintiff has satisfied Rule 23(a)(2)'s commonality requirement.

C. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." The claims of the class representative need not be identical to those of the individual class members; rather, "there need only exist 'a sufficient nexus … between the legal claims of the named class representative and those individual class members to warrant class certification.'" *Ault v. Walt Disney World Co.*, 692 F.3d 1212, 1216 (11th Cir. 2012) (quoting *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278-79 (11th Cir. 2000)). "This nexus exists 'if the claims … of the class and the class representative arise from the same

event or pattern or practice and are based on the same legal theory.'" *Id.* (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Furthermore, "[a] class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Vega*, 564 F.3d at 1275 (quoting *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008)). Lastly, the presence of substantial factual differences does not negate a finding that the typicality requirement has been met so long as "there is a strong similarity of legal theories." *Local 703, I.B. of T. Grocery & Food Emps. Welfare Fund v. Regions Fin. Corp.*, No. 12-14168, 2014 WL 3844070, at *8 (11th Cir. Aug. 6, 2014) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1357 (11th Cir. 2009)).

As with the commonality requirement, Defendants' arguments focus on whether individualized factual determinations predominate over questions of fact that are common to the class. The Court finds that Defendants have yet again conflated the Rule 23(b)(3) requirement with the Rule 23(a)(3) requirement. As discussed above, to satisfy the typicality requirement, Plaintiff need only show that there exists a causal nexus between the claims of the class representative and those of the class members.

Plaintiff's breach of warranty claim is typical of the class he seeks to represent because his claim and that of the class arise from the same event and are based on the same legal theory. Plaintiff alleges that he and the class members purchased the Product, read and followed the instructions included on the Product, which warranted that sweeping the Product away from hard surfaces will prevent staining, and despite their efforts, the Product stained the hard surfaces on their real property. Plaintiff, as well as the proposed class members, share the same injury and their claims are based on the same legal theory. Namely, that Defendants' representation that

"[s]weeping product from hard surfaces onto the lawn keeps product on the grass and prevents staining" created an express warranty that staining could be avoided through proper application and clean-up of the Product.  Because there is a causal connection between Plaintiff's claim and that of the class, the Court finds that Plaintiff has satisfied the Rule 23(a)(3) requirement.

D. Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  The adequacy of representation analysis requires the Court to address two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representative and the class; and (2) whether the representatives will adequately prosecute the action."  *Valley Drug Co.*, 350 F.3d at 1189 (quoting *In re HealthSouth Corp. Sec. Litig.*, 213 F.R.D. 447, 460–61 (N.D. Ala. 2003)).  The adequacy requirement also asks whether plaintiff's counsel are "qualified, experienced and generally able to conduct the proposed litigation."  *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985).

Only a fundamental conflict of interest that relates to the specific issues in controversy will defeat a party's claim to class certification.  *Valley Drug Co.*, 350 F.3d at 1189.  For example, a fundamental conflict of interest exists "where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class."  *Id.*  Furthermore, if the economic interests and objectives of the named representatives differ significantly from the economic interests and objectives of the unnamed class members, class certification should be denied.  *Id.* at 1190.

Although Defendants do not challenge whether Plaintiff or Plaintiff's counsel are adequate representatives of the class, the Court is still required to address each requirement of

Rule 23(a). There is no evidence suggesting a substantial conflict of interest exists between the Plaintiff and the class members. Plaintiff appears to have a strong interest in proving that Defendants representations created an express warranty, the express warranty was breached and as a result, there was damage to the hard surfaces surrounding real property. This is the same interest the class would have is certified. Because Plaintiff shares the same economic interests and objectives as the proposed class, *i.e.*, obtaining monetary damages to rectify the staining to hard surfaces on real property, the Court finds that Plaintiff is well-positioned to vigorously prosecute the proposed class action.

In addition, the Court finds that J. Andrew Meyer and Jonathan B. Cohen from the law firm of Morgan & Morgan Complex Litigation Group to be adequate class counsel. The Court has reviewed the biographies of the lawyers representing Plaintiff in this matter, which sets forth their experience and expertise in class actions. D.E. 29-19. Based upon this review, the Court is satisfied that Plaintiff's counsel are qualified, experienced and able to prosecute this action.

After a careful analysis the Court finds that the Plaintiff has satisfied all the prerequisites found in Fed. R. Civ. P. 23(a).

II. Rule 23(b)(3) Requirements

Rule 23(b)(3) requires a plaintiff to establish that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to all other available methods for fairly and efficiently adjudicating the controversy."

A. Predominance

"[T]he issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997) (internal quotations marks and citation omitted). The Eleventh Circuit has further explained that "[w]hether an issue predominates can only be determined after considering what value the resolution of the class-wide issue will have in each class member's underlying cause of action." *Vega*, 564 F.3d at 1270 (internal quotation marks and citation omitted). In another case, the Eleventh Circuit stated:

> Common issues of fact and law predominate if they "ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief . . . [C]ommon issues will not predominate over individual questions if, "as a practical matter, the resolution of [an] overarching common issue breaks down into an unmanageable variety of individual legal and factual issues."

*Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (citations omitted).

The Eleventh Circuit has adopted the following test for evaluating predominance:

Where, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims, such claims are not suitable for class certification under Rule 23(b)(3).… [I]f common issues truly predominate over individualized issues in a lawsuit, then the addition or subtraction of any of the plaintiffs to or from the class [should not] have a substantial effect on the substance or quantity of evidence offered. Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Vega*, 564 F.3d at 1270 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004)).

Plaintiff claims that the following predominant questions are common to Plaintiff and the proposed class members: (1) whether Defendants' labeling of the Product created an express warranty; (2) whether the labeling, coupled with Defendants' knowledge that the Product would stain, constitutes a breach of warranty; (3) whether the representations on the Product packaging were identical; and (4) whether adherence to the instructions included on the Product packaging would have any bearing on the outcome.  D.E. 29 at 17.

In contrast, the Defendants argue that there are "too many significant individual questions relating to the essential elements of Plaintiff's claim for breach of express warranty, as well as the applicable defenses and resulting damages."  D.E. 32 at 15.  More specifically, Defendants argue that the reliance, notice and damages elements of a breach of express warranty claim require individual factual questions.  Defendants, however, fail to explain which defenses raise individual questions and how these defenses raise individual issues that predominate over common issues.

In addition, the parties disagree as to whether reliance is a necessary element of a breach of express warranty claim.  Plaintiff argues that Florida law is unsettled as to whether reliance is required, *see* D.E. 36 at 7-8 (citing *Southern Broad. Group, LLC v. Gem Broad., Inc.*, 145 F. Supp. 2d 1316, 1321 (M.D. Fla. 2001) (noting that the Eleventh Circuit has found that reliance is an element of a breach of express warranty claim but the Florida Supreme Court has not yet ruled on this issue)), and Defendants argue that reliance is required, *see* D.E. 32 at 16 (citing *Weimar v. Yacht Club Point Estates, Inc.*, 223 So. 2d 100, 104 (Fla. Dist. Ct. App. 1969)).

In analyzing whether common questions predominate over individual questions, the Court must "consider the claims, defenses, relevant facts, and applicable substantive law."  *DWFII*

*Corp. v. State Farm Mut. Auto. Ins. Co.*, 469 F. App'x 762, 765 (11th Cir. 2012) (internal quotations marks and citation omitted).  However, the Court need not decide at this juncture whether reliance is an essential element of a breach of express warranty claim because even if reliance is not an element, individual questions would still predominate over common questions.[4]

The first element of a breach of express warranty claim under Florida law requires proof of facts in respect to the sale of the product or other circumstances giving rise to warranty.  Plaintiff has not argued or presented any evidence that this element is subject to generalized proof.  As the Court indicated in its analysis of the class definition, in order to determine which class members satisfy this element, each person would have to submit a receipt, packaging of the Product or some other evidence that he or she purchased the Product.  The Court finds that this would inject several individual issues into this class action.

Next, each class member will have to prove that he or she was injured by the Product and the circumstances of the injury as caused by the breach of warranty.  At a minimum, this means that each class member would have to submit evidence showing the Product was used, how and where the Product was used, whether the Product stained hard surfaces on the class member's

---

[4] The Court notes that whether reliance is a required element under Florida law was not sufficiently briefed by the parties.  Plaintiff did not file a breach of express warranty claim under the Florida Uniform Commercial Code yet some of the cases relied on by the parties involved breach of express warranty claims under the Florida Uniform Commercial Code and neither party discussed the split between Florida case law on reliance and the Florida Uniform Commercial Code's treatment of the reliance element.  *See* Fla. Stat. § 672.313 Fla. Code cmt. ("Note that in subsection (1)(a), the element of reliance by the buyer has been eliminated from the definition of breach of an express warranty. Florida [courts] ha[ve] required not only an affirmation of fact or promise by the seller relating to the goods, but also reliance by the buyer on such affirmation or promise.").  The Court cautions the parties against continuing this practice and suggests that in future filings the parties be precise in distinguishing between Florida case law on reliance and the Florida Uniform Commercial Code's treatment of reliance for a breach of express warranty claim as well as fully explain which should apply.

property, how the Product was removed (if at all) from such hard surfaces and which hard surfaces were stained.  Under Plaintiff's theory of the case, theses issues are subject to generalized proof because the Product could never be adequately cleaned from hard surfaces, even by sweeping it off of hard surfaces, and would inevitably result in staining once it came in contact with hard surfaces.  D.E. 36 at 9.  Although generalized proof may exist as to whether the Product causes staining, such proof does not abrogate the need for proof on whether each class member used the Product and whether the Product caused the staining to each class member's hard surfaces.  The existence of stains on hard surfaces is not evidence that the Product was used by each class member or that the Product caused staining to each class member's hard surfaces.  Therefore, the Court would have to hear evidence relating to whether each class member used the Product and evidence on causation, which would inject more individual issues into this class action.

Furthermore, assuming reliance is a required element, each class member would have to prove reliance on Defendant's representation that sweeping the Product off of hard surfaces prevents staining.

Finally, although the presence of individual damages issues is not fatal to a finding of predominance, *Allapattah Servs., Inc. v Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003), the Court finds that, considered together with the other factors above, this factor would further weigh against a finding that common issues predominate here.

Applying the test for evaluating predominance set forth in *Vega*, if this Court were to certify the proposed class, after adjudication of classwide issues, Plaintiff, as would each individual class member, would still need to introduce a great deal of individualized proof to

establish most of the elements of his individual claim.  Moreover, the addition of more individuals to the class would require the presentation of significant amounts of new evidence on the individual issues discussed above.  Therefore, the Court finds that individual issues predominate over common issues and Plaintiff has failed to satisfy the first requirement of Rule 23(b)(3).  Because Plaintiff has failed to show that common issues predominate here, the Court need not address whether the class action mechanism is superior to all other forms of litigation.

III. Rule 23(b)(2) Requirements

Plaintiff seeks class certification under Rule 23(b)(2) in the event the Court denies certification under Rule 23(b)(3).  D.E. 36 at 10.  Rule 23(b)(2) requires a showing that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."

According to Plaintiff's Complaint, Plaintiff seeks to enjoin Defendants from representing that adherence to the instructions provided on the Product packaging will prevent hard surface staining, omitting material disclosures regarding the likelihood that the Product will cause staining and breaching the express warrant included on the Product packaging.  Compl. ¶ 33.  Defendants counter that such injunctive relief is not necessary for the following reasons: (i) in August 2012 Defendants repackaged the Product which resulted in the removal of the language that Plaintiff alleges created an express warranty and the inclusion of highlighted language stating that staining may occur; (ii) Defendants no longer sell the Product with the alleged express warranty language at issue here; and (iii) any effort to relabel the Product is impractical because the version of the Product at issue in this case is no longer in Defendants'

possession and it is unlikely that this version of the Product are at retail locations two years after the repackaging of the Product. Defendants further argue the injunctive relief sought in this action is only incidental to Plaintiff's primary claim for monetary damages, making certification of a Rule 23(b)(2) class inappropriate here.

The Court agrees with the Defendants. Plaintiff seeks injunctive relief only as an alternative to his claim for damages resulting from the staining of his hard surfaces. Based on the record, most if not all of the injunctive relief requested here has been rendered moot by the changes the Defendants have made to the packaging of the Product. Therefore, the Court finds that certification under Rule 23(b)(2) would be inappropriate because the requested injunctive relief is most likely moot. Furthermore, in light of all of the allegations in the Complaint relating to damages to real property and the out-of-pocket expenses incurred by Plaintiff and class members, the Court finds that the monetary relief requested here predominates over the injunctive relief requested. *Mohawk Industries, Inc.*, 568 F.3d at 1359 (noting that "certification under section (b)(2) is *not* proper in cases in which the appropriate final relief related exclusively or *predominantly* to money damages") (internal quotation marks and citation omitted).

## CONCLUSION

Based on the foregoing, the Court finds that Plaintiff has not satisfied the requirements of Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3). Accordingly, it is

ORDERED AND ADJUDGED that the Motions, D.E. 16 & 28, are DENIED.

DONE AND ORDERED in Chambers in Miami, Florida, this 20th day of October, 2014.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record